## ISAAC TROTH *v.* ABEL N. TROTH and others.

The pleadings raised the question of the constitutionality of an act of the Legislature incorporating a company, and authorizing them to construct a turnpike road on a public highway, and charge tolls, provided, that, before the company shall construct the turnpike road along the said highway, they shall pay to the owners of the lands over which the said highway passes all damages they will sustain by the construction of said turnpike road: and provided, that the said act shall not take effect until the public highway be vacated as a public highway, according to law.

The Chancellor said it was a question more proper for a court of law; and, under the circumstances of the case, left the complainant to his remedy at law.

On the 15th of November, 1849, Isaac Troth exhibited his bill, stating that he is seized of 96 acres of land, in the township of Delaware, in the county of Camden, of which he and those under whom he claims title have been in possession for one hundred and fifty years. That while said lands were owned by Benjamin Morgan, under whom he derives title, a public highway, called the great highway from Burlington to Salem, was laid through the farm then owned by said Morgan; which highway has been kept open and used as a public highway from that time to the present. That said farm was, subsequently, either sold or divided, so that the portion of it lying on one side of said highway, and extending to the middle thereof, became the property of one proprietor, and the other part, extending to the middle of the highway, became the property of another proprietor; and the part therof now owned by the complainant is bounded on the middle of said highway for about one quarter of a mile. That there is on the said highway, and in front of complainant's land, and in part erected thereon, in the said highway, a stone bridge, which is necessasy for the use of the said highway.

That, on the 28th of February, 1849, the Legislature of New Jersey passed an act entitled " An Act to incorporate the Camden, Ellisburgh & Marlton Turnpike Company." That by the 2d section of said act, it was enacted, " that the capital stock of said Company should be $30,000, with liberty to increase it to

$60,000, and shall be divided into shares of $25 each; and that, when six hundred shares shall be subscribed for, the persons holding the same shall be, and they are hereby incorporoted, by the name &c.; and by that name shall have, enjoy and exercise all the rights, powers and privileges appertaining to corporate bodies and necessary to carry the objects of this act into effect. That by the 11th section it is enacted, that it shall be lawful for the Company to construct a turnpike road from Marlton in the county of Burlington, through Ellisburgh, in the county of Camden, to the truss bridge over Cooper's creek in the county of Camden; which turnpike road shall be constructed and made along the main public highway leading from Marlton aforesaid, and through Ellisburgh aforesaid, to the said truss bridge; and it shall be lawful for the said Company, by their officers, agents, &c., to enter, from time to time and at all times, upon all lands, for the purpose of searching for stone, gravel, sand, clay or other materials for the construction or use of said road; Provided, that before the said Company shall construct the said turnpike road along the said highway, they shall pay, to the respective owners of the lands over which the said highway now passes, all damages which the said owners will sustain by reason of the construction of said turnpike road. (A mode is provided for ascertaining these damages.)

That by the 21st section it is enacted, that this act shall not take effect until the public highway upon which the said turnpike is authorized to be located and made is vacated as a public highway, according to law.

The bill then states, that Thomas Evans, John McCurdy and others, ten or more freeholders of Burlington and Camden, applied to the Supreme Court in April, 1849, for the appointment of surveyors to view and vacate the said public highway, from the truss bridge to the junction thereof with the public highway leading from Marlton to the green tree tavern, in the township of Gresham. That the Supreme Court appointed surveyors of the said two counties to view said road and certify whether the same was necessary. That, in the term of July, 1849, the said surveyors reported to the Supreme Court that the said road was

unnecessary. That, at the same term, Ralph V. M. Cooper filed a caveat against the recording of the return of said surveyors; and thereupon the said Court, at the same term, appointed three freeholders of each of said counties (naming the freeholders) to view and certify as regards said road so vacated. That at the Sptember term 1849 of the Supreme Court, the said freeholders certified to the said Court that the vacating of the said road was necessary and useful; and the Supreme Court caused their return to be recorded.

The bill states that, before the said public highway was vacated, the commissioners under the said act of incorporation opened books for subscription to the stock of said Turnpike Company and, on the 21st of May, 1849, the stockholders proceeded to elect directors. That, notwithstanding the said directors were elected previous to the vacating of said highway, yet they have employed an engineer and laborers, and are proceeding to form a turnpike road on the ground formerly occupied by said highway, and have caused their engineer and laborers to commence working on the land of Jacob Troth, in the formation of a turnpike road, on the ground formally occupied by said public highway so vacated as aforesaid.

That Charles Knight, one of the directors of said Turnpike Company, told the complainant, on or about November 6th, 1849, that they would show the complainant how soon they would go to work on complainant's land, when they got commissioners appointed. That said Company, by their workmen, were at work on the land of said Jacob Troth, at a distance of only half a mile from complainant's land, on the 8th of November, 1849; and that, according to the progress they have already made, they would reach the complainant's land in three or four days; and that, according to the grade they have adopted, they will have to excavate the ground of complainant in front of his house, and for a great distance through his land, to the depth of three feet, and will render the approach to his house very difficult, and in some places almost inaccessible with wagons and carriages, and will do serious injury to the premises of the complainant.

That there is, on that part of the land of complainant formerly occupied by said highway vacated as aforesaid, a stone bridge which formed a part of the said highway, and was built, in part, on the land of complainant. And that, on the 8th of November, 1849, some masons came to his house and inquired if they could obtain board there while they would be working at the alteration of said bridge; and the complainant thereupon forbade them from disturbing the soil of the complainant and from altering said bridge; and, further, the complainant posted up, in conspicuous places, written notices forbidding the said Company, their agents, &c. from disturbing or excavating his soil, and from altering or interfering with said bridge.

He charges that, notwithstanding said notice, the Company, by their agents, intend to enter upon the complainant's land, and to excavate thereon, and to disturb his soil, and to alter the said bridge, and to convert his land into a turnpike road for the use of said Company.

That he has been informed and believes, that the said Company intend to erect gates across said turnpike road, which they are now constructing on the land formerly occupied by the said public highway, so vacated as aforesaid, and to exact tolls from persons passing through said gates, according to the rates &c.; and that one of said gates is to be erected between the complainant's land and Cooper's bridge, so as to compel him to pay tolls for passing over his own land.

That there were twelve bridges on that part of said public highway which lay in the county of Camden, at the time the said highway was vacated as aforesaid. That the Board of Chosen Freeholders of the county of Camden, on the 19th March, 1849, passed a resolution agreeing to give to such turnpike companies within said county as should go into operation before January 1, 1851, all the county bridges, and material therein contained, which may be upon such roads as shall be turnpiked, without any charge therefor: Provided that, if said companies or any of them, shall not go into operation, or shall not continue in operation, then the county bridges upon such road so failing to go into operation shall revert to and become the property of the

county; under which resolution the said Turnpike Company pretend to own or set up a claim to the said bridges.

That that part of said public highway, vacated as aforesaid, which lies between the mouth of the Ellisburgh road and Cooper's creek, was a part of the great road leading from Perth Amboy to Salem, which was laid out more than one hundred and fifty years ago, and which, by the 36th section of the act entitled " An act concerning roads," is declared to be subject to the same laws and regulations to which other highways in this State are subject; and that the gate which the said Company intend to erect between complainant's land and Cooper's bridge will be placed on that part of said land which was a part of the great road from Perth Amboy to Salem; and by means of said gate the said Company will compel the complainant and all others &c. to pay toll.

Among the pretences charged are the following : " And sometimes the said confederates pretend, that the soil and land on which is the said main public highway from the village of Marlton, through Ellisburgh, to the truss bridge belonged to the public, and that the Legislature of New Jersey had authority, and might by law give the said soil and land, after the public highway was vacated, to a private corporation for the purpose of making a turnpike road, and authorizing said corporation to take tolls thereon ; the contrary whereof the complainant charges to be true ; and he charges, substantially, that a highway is but an easement: and that, when it is vacated, the owner of the land over which it ran holds the land discharged from the easement.

That sometimes the confederates pretend, that the Legislature of New Jersey have a right to take private property, and to authorize a corporation to take it, for their private use, without the consent of the proprietor : the contrary whereof &c.

And sometimes the said confederates pretend, that the said turnpike road which the said Turnpike Company are authorized to make is a public highway : the contrary whereof &c.

And sometimes the said confederates pretend, that the authorizing the said Turnpike Company to take the land of the complainant for the purpose of making a turnpike road thereon, ac-

cording to the provisions and restrictions of the said act to incorporate said Company, is taking the same for public and not for private use, and that the law authorizing them so to do is legal and constitutional : the contrary whereof &c.

The bill prays, that the individuals therein named as defendants, and the said Company be restrained by injunction from constructing a turnpike road on the lands of the complainant, and from digging up and excavating his soil, and from altering or removing any of the said bridges, and from removing any of the materials of the same, and from erecting gates on the said road ; and that the complainant may be quieted in his title to that part of his lands which was lately occupied by the said public highway which has been vacated ; and that the defendants may be decreed to account to the complainant for all damages which they may have committed to the complainant's property ; and· for such other and further relief, &c.

The injunction prayed was allowed, by Master Ewing.

The defendants put in their joint and several answer, stating, (so far as it is necessary to be considered for the purpose of deciding the present motion,) that the stone bridge mentioned in the bill was erected by the Board of Chosen Freeholders of Gloucester, before the creation of Camden county ; and that it is now in the county of Camden ; that only about one-fourth of it lies within the boundaries of the complainant's farm ; and that the whole of said bridge is in and across the said highway, and makes a necessary part of it.

They admit the act of incorporation as stated in the bill.

They admit that the subscription books were opened, and that more than 600 shares were subscribed for ; and that directors of said Turnpike Company were elected, and the Company organized before the said highway was vacated.

They say that, after the vacating of the said road, they employed an engineer and laborers, and are proceeding to form a turnpike road on and along the said public highway as it was before being vacated as aforesaid, and are working on land of

one Jacob Troth, at the distance of about one mile from the complainant's land; but they say that their operations on the land of said Jacob Troth are with his consent; and that it is not now and never has been the intention of the Company, or of the directors thereof, to enter upon the land of the complainant to construct said turnpike road without his consent or until after he shall be paid all damages which he will sustain by reason of the construction of said turnpike road; and they say that, because the Company and the complainant could not agree upon the amount of said damages, the Company have applied to T. P. Carpenter, a Justice of the Supreme Court, &c.; and that he has fixed upon a time for the appointment of commissioners to ascertain said damages, and that notice thereof has been given according to the said act.

They deny that the Company or directors ever employed, authorized or directed the masons mentioned in the bill, or any other person, to tear down, alter or disturb the said bridge; or that it is their intention to do so until the complainant shall be paid his damages sustained by the construction of said road, or his consent is obtained.

They deny, that in the construction of the turnpike road they will excavate &c. as stated in the bill; but say that, by the grade they have adopted, the turnpike, when finished, will be, opposite the complainant's buildings, only one inch lower than the old highway; and that, in the opinion of the defendants, no serious, much less irreparable injury will be done to the complainant in constructing said road; but that he will be greatly benefitted; but that, whatever the damages may be, the Company are fully able and willing to pay the same, as soon as they can be ascertained in the mode pointed out by the act.

They deny any intention to erect gates until the road shall be completed; and say they are wholly unable to state at what particular places gates will then be erected; and say that they have no intention of compelling the complainant to pay any other than such tolls as are authorized by the act.

They aver, that the highway so vacated was not a part of the great highway from Burlington to Salem.

They deny that that part of said highway which lies between the mouth of the Ellisburgh road and Cooper's creek was ever a part of the great road leading from Perth Amboy to Salem ; and they deny that the Company intend or have ever contemplated the erection of any toll gate on that part of said highway.

A motion was made to dissolve the injunction.

*Dudley* and *Browning* in support of the motion.    They cited 1 *John. Ch.* 318; 7 *Ib.* 315, 336; *Baldwin's Rep.* 218, 223; 1 *Green's Ch.* 422 ; 2 *Ib.* 467 ; *Saxt. Ch.* 369.

*W. Halsted* contra.    He cited 23 *Wend.* 193 ; 3 *Harr. Rep.* 200, 204 ; 1 *Bald. Rep.* 222, 217 ; 5 *Ired.* 297 ; 2 *John. Ch.* 162, 7 ; 3 *Barr's Par. Rep.* 281 ; 3 *Green's Ch.* 177.

THE CHANCELLOR.    I do not see that this is a case for the interposition of this Court by injunction, or rather for the retaining of an injunction, under the bill and answer.

The constitutional question is more proper for a Court of law, and can easily be raised by a proceeding at law by the land owner, the complainant here, after he shall have ascertained what rule of damages the Company claim.

Injunction dissolved.